Case No. 24-5104. Michael C. Baxley, appellant, v. Daniel Driscoll, Honorable, in his official capacity as Secretary of the Army and Army Board for Correction of Military Records. Mr. Claypool, amicus veriae, appellant, Mr. Walker, appellate. Mr. Claypool, good morning. Good morning, Your Honors, and may it please the Court. McCade Claypool, court-appointed amicus in support of appellant Michael Baxley, and I'd like to reserve two minutes for rebuttal. Mr. Baxley asked the Board to update his discharge status from under honorable conditions to honorable for two independent reasons. First, the Army violated the exemption policy in 1976, and second, that he had a mental health condition while in service that mitigated the reasons for his discharge. I'll address both issues briefly, but the core of the argument on both issues is the same. The Board failed to consider critical aspects of each issue, and therefore this Court should vacate and remand for further consideration. I'll start with the exemption policy. It's important to note that the parties agree on the definition of prohibited evidence. It's any information that was introduced to program staff or evidence that's developed from that information. The parties also agree that if prohibited evidence was introduced, then honorable discharge is automatic. It's not discretionary. So the only issue here is whether Mr. Baxley's rehabilitation failure determination constituted prohibited evidence. And the key issue with the Board's analysis is that it failed to analyze that question. Instead, it took a categorical approach, adopting the staff judge advocate's interpretation from 1976 that said rehabilitation failure determinations can never be prohibited evidence. But under the Army Regulation 685, Section 5.8, the regulations make clear that this determination is made in consultation with program staff. And because it's made in consultation with program staff, it could be based on information revealed to the staff. And so the staff judge advocate completely overlooked that reality, and so did the Board. And on that critical issue, this Court should remand also. If the discharge request, for lack of a better word, putting it, I'm trying to find it in the appendix. Essentially, the document that begins the whole process, I think it's at JA 155. This is the recommendation for discharge?  If that document said anywhere in it that he was a ADA PCP rehabilitation failure, this would be an easy case, right? If the motivation for recommending that discharge was his participation in the program, then yes, it would be an easier case. Because the way that the first sentence of, I think it's paragraph 3-18 is written, it's clear that if the motivation for separation in part at all is based on participation in the drug and alcohol rehabilitation program, then that's foreboding and has to be an honorable discharge. Your friend on the other side says, okay, that didn't happen here, but we can do the same thing. We can omit it in the recommendation, but we can just put those words in the file during the proceeding, and we don't violate the second sentence of that regulation. What's wrong with that interpretation? So, two responses, Your Honor. Later in 3-18d, it clarifies that aside from the motivation for initiating discharge, there's also a separate protection for when evidence is introduced during the proceeding, or as you said, sort of just put in the record. And in that, it says if there's prohibited evidence that was just introduced, even if it wasn't relied on, that, too, requires honorable discharge. And that second situation is where we are here. This rehabilitation failure determination could have been based on the information communicated to staff, and it's undisputed that the documents, I think it's C-6, 8, C-18, C-22, these reference that determination failure. And I think it's JA-144 or 145, the recorder introduced that evidence. So, it's the introduction issue, not the motivation for discharge. Are you familiar with the case called the United States v. Howes? No, Your Honor, I'm not familiar with that case. It's the Army Court of Military Review opinion from 1986 at 22MJ704. But it's a case where that court held that it violates 600, Army Regulation 600-85, where at a court-martial proceeding, the trial counsel prosecutor introduced evidence that the defendant was a rehabilitation failure. You're not familiar with that case? I'm not, Your Honor, but it does align very well here because that's exactly what happened here, an introduction of rehabilitation failure evidence. And the one thing I'll note as well is the board did give other justifications, like the failure to object or to introduce the evidence that Mr. Baxley raised it himself. Both of those, as we describe in our papers, are clearly not relevant to the analysis, and I don't think opposing counsel disputes that. I just want to turn very briefly to the mental health issues as well. It's sort of the same issue here. The CURTA memorandum given in 2017 identifies relevant considerations that the board should consider when they are sort of adjudicating these applications based on mental health conditions. And here, again, the board does not dispute that it failed to consider the vast majority of those considerations, including changes in behavior, his substance abuse, and even whether that misconduct itself was evidence of a mental health challenge. Instead, the board only looked at a 1976 mental health evaluation, which, as we described, is not sufficient because Mr. Baxley's mental health condition itself was not clinically recognized until 2013. And so the fact that the board did not look beyond that evaluation, as the CURTA memorandum directs, is another reason why remand is warranted so it can consider those issues. The last thing I'll note on the mental health piece is that the CURTA memorandum specifically identifies the veteran affairs determination that he had a service-connected disability. And with that, the board, instead of grappling with it or explaining why it's not persuasive in this instance, as the CURTA memorandum directs, it said this is a separate inquiry and it's irrelevant. And it doesn't align with what the CURTA memorandum said. And so, again, another explanation that the board would need to grapple with on remand. I misspoke about how actually the testimony was that the defendant was a rehabilitation success, but it was still deemed prejudicial because it inserted that he had been in the program. Right. And critically, you know, we do agree that, well, and I guess there's no dispute that there was an introduction that he had participated in the program, but specifically not just his participation, but his failure, how he conducted himself in the program. And that really is where it starts to cross the line. I see that my sort of main time is up. I'd like to reserve the rest of my time for rebuttal unless the court has further questions. All right. Thank you. Mr. Walker. It please the court. Johnny Walker on behalf of the Secretary of the Army. Your Honor, I will start with the exemption policy. And I think the parties do agree on what the exemption policy prohibits, and it is the information in the table that is at JA-227. The information that cannot be introduced during the discharge proceedings is information or evidence derived from information that is revealed by Mr. Baxley to the physicians and counselors of the rehabilitation program. But what was introduced in the discharge proceedings is the bare fact that Mr. Baxley had failed that rehabilitation program. The failure at rehabilitation is a determination that is made by Mr. Baxley's immediate commander. It is by its nature separate and distinct from anything that Mr. Baxley would have revealed to his counselors. And so we think that by its nature, it is very different from anything that could be protected by the policy. But even if you accept Amicus's premise that it could be the same, which is the way they put it, that it could be derived from protected information, here the record is quite clear that it was not. The record supports the conclusion that Mr. Baxley was determined to be a rehabilitation failure in November of 1975. That's established by JA-205. What we also know is in that same month, Mr. Baxley was arrested and incarcerated for driving under the influence. That's at JA-208. And it is that driving under the influence charge that led to him being determined to be a rehabilitation failure. This is supported by the commander's bar to reenlistment, which is at JA-236, and specifically says that Mr. Baxley was identified as a rehabilitation failure by court referral, not by anything that was conveyed to the commander by the counselors that Mr. Baxley revealed to them in confidence. Which document are you talking about? Say that again. Yes, I'm talking about the bar to reenlistment that Mr. Baxley's commander executed after Mr. Baxley failed the rehabilitation program. That's at JA-236. And it identifies that he was identified as a rehabilitation failure by court referral. So both by its nature, we don't think that a rehabilitation failure amounts to protected communications under the exemption policy. And even if it could here, it is clearly not. And that's demonstrated by the record. Explain to me how as a court referral falls outside of the exemption policy. So the exemption policy, if you look at JA-227, that is the specific definition of information that cannot be introduced in the exemption, in the discharge proceedings. And it's fairly circumscribed. It is information or evidence derived from information that Mr. Baxley reveals to physicians or counselors in the program as part of an initial screening or as part of a regular evaluation or information that is the result of a drug test that he takes as part of the rehabilitation program. So it's circumscribed to those communications he has with the physicians and counselors and the drug tests that he takes as part of the program. So I think amicus' theory is, well, the commander in determining whether or not Mr. Baxley failed the rehabilitation program is directed to consult with those individuals. So it could be possible that those individuals revealed to the commander these protected communications as part of that consultation. And that the commander could have based the discharge, or I'm sorry, the rehabilitation failure determination on those protected communications. And therefore, the rehabilitation failure determination is itself a derivative of those protected communications. We think that is too attenuated, that it cannot be that the rehabilitation failure is derivative of those protected communications under that scenario. And I think this is also supported by the fact, as we note, that a determination that a soldier is a rehabilitation failure is itself grounds for a discharge. So it does not make sense to say that the rehabilitation failure determination can't come into a discharge proceeding. The problem with that theory, though, is that my understanding from reading this regulation and looking at corrections, proceedings involving service members from around that time is that if someone has been deemed a rehabilitation failure, they can be discharged on that basis, but it has to be an honorable discharge. But the kicker is that your certificate says that it's honorable discharge, but the reason is because you were a drug or alcohol rehabilitation failure, which isn't great to have on your discharge paper. But on the other hand, you have an honorable discharge, so you get all of your benefits. I think you're honored that if the discharge is based solely on rehabilitation failure, that's correct. It would need to be an honorable discharge, but that goes to the motivating factor part of the exemption policy. But amicus' premise is that simply introducing the rehabilitation failure into any discharge proceeding results in an honorable discharge. And so that could be the case in which the rehabilitation failure is part of the discharge basis, but there are also significant other misconduct on behalf of the soldier, as with Mr. Baxley, including assaulting a female service member, displaying poor motivation, failing at the retraining facility in Kansas, disobeying orders, violating a no-pass policy, violating a curfew, a significant amount of other misconduct that justifies the other than honorable discharge characterization. But by merely introducing one of the basis for discharge, he's required to be given an honorable discharge. So the document at JA-155, the recommendation that he be discharged, that starts the whole ball rolling. Let's suppose there were also appeared there at the end and Mr. Baxley was deemed a drug and alcohol program rehabilitation failure. Let's suppose that sentence was at the very end. What under the regulations is your view as to what should happen at that point if that were appeared at JA-155? That would not be a problem because, as I said, the nature of that rehabilitation failure, by its nature, it is too attenuated from any protected communications or drug tests, certainly, that Mr. Baxley had as part of the rehabilitation program. But also, apart from the nature, as I said, the record here just does not support any connection between those communications and the rehabilitation failure determination. Both of you seem to agree that this is a situation in which the action taken, a disputed action could have been based on prohibited activity. Both of you were agreeing. Your argument embraces that it could have been, and they are saying could have been means it was. Who has the burden of proof? I mean, it's up to Mr. Baxley, obviously, in this court. Is there something that's said in a situation like this, the burden of proof is clearly on them or on the government? I think the burden is on them to identify. No, not you think. Is there some authority? It is. The burden is on them to identify some evidence that the board ignored that rendered its decision arbitrary and capricious. And all they are saying is that it could be possible that there is some connection. You're saying that, too. You're saying that the officer's statement that is now in dispute could have been based on prohibited evidence? I'm actually not saying that. I'm saying that they are, by their nature, distinct. A rehabilitation failure and those protected communications are, by their nature, too attenuated to implicate the protected use policy as to the rehabilitation failure determination. I'm saying even apart from that. If we knew that the officer reported a rehabilitation failure, had talked to the counselors, and then said he was a rehabilitation failure, you would agree that's a problem, right? I would not. I think it still is. Even if he called the counselors in to tell me, and they go through it all and explain conversations that were had between the counselors and the plaintiff here, that would not be an issue? I think it would be an issue if, during the discharge proceedings, somebody said, during the rehabilitation process, Mr. Baxley revealed to a counselor that he was continuing to struggle with substance abuse. Well, let me just play it out a little bit more. Suppose when asked, when the officer said there was a rehabilitation failure, someone says, how do you know that? He says, well, because I talked to the counselor, and based on the conversation they had with the plaintiff, their view is, and my view is, based on those conversations, he's a rehabilitation failure. Is that a problem? I don't think it is a problem because, as I said, the rehabilitation failure is a determination that must be made by the commander. The determination is based on the conversations between the plaintiff and the counselors, with whom we're not supposed to know anything about, if it's based on that. Because the deciding officer went and talked with him, and he said, well, okay, when you explain it that way, that's clearly a rehabilitation failure. And then someone says, well, what do you mean by that? He says, well, I talked to the counselors, and he really screwed up the process. That's not prohibited? I don't think it is. As I say, it has to be information or evidence derived from information that Mr. Baxley revealed to his counselors. I guess the way you would get there is to say that the determination is evidence derived from information that Mr. Baxley revealed to his counselors. But as I say, we think that the rehabilitation failure is itself an independent act that's attenuated from that. And given the fact that the rehabilitation failure is itself a basis for discharge, we think that that has to be something that is allotted to the discharge proceedings. But, again, that's our position. But even if you accept amicus' premise that a rehabilitation failure determination that is connected to those protected communications could violate the limited-use policy, here the record demonstrates that Mr. Baxley was determined to be – certainly there's nothing in the record that does make that connection between protected communications and the rehabilitation failure determination. And quite the contrary, there are indications in the record that that determination was based on Mr. Baxley's arrest. That's not –  JA-236 doesn't say that. It says he's been identified as a drug rehabilitation failure at the court referral. Somebody can enter the program because they are a court referral, meaning that you get arrested for a DUI or you get arrested for drug possession, and then you are referred to the ADA PCP, right? Right, but that's not what this is saying. This is saying that he was identified as a failure by the court referral. So what I take that to be referring to is Mr. Baxley's involvement in court this same month or the preceding month to this as a result of the DUI. That's what identifies him as a failure of drug rehabilitation – of rehabilitation program. And there's something in the regulations – this is a stronger part of your argument – there's something in the regulation that a rehabilitation failure is something that the office is supposed to act on in any event, right? Right, that it is a basis for separation. Which means that it is something that can be known and stated. Exactly. I mean, that's the weakest part of the argument as far as I can see from the plaintiffs. I don't know you can acknowledge that as a basis for action against them and say merely designating someone as a rehabilitation failure is prohibited evidence when it can be a basis for dismissal. And amicus' response to that is going to be, well, if it is a basis for dismissal and if you do put that evidence in, it just has to be an honorable discharge. But what that means is an individual for whom that is a basis for discharge regardless of other misconduct – and it could be misconduct much worse than Mr. Baxley has committed here – that that individual is nevertheless going to get an honorable, the highest level of service characterization that the Army awards regardless of their conduct. That just cannot be. It cannot be that failing a drug rehabilitation program is a free ticket to an honorable discharge regardless of your other misconduct. That's not – I don't think you are fairly characterizing the regulation. I mean, I went back and looked at lots of Board of Corrections decisions involving rehabilitation failures as grounds for the discharge, and they're all very clear. And there's commentary, testimony in Congress where people are, you know, describing how this program works, where if the military decides to go down the road of separating the person because of their rehabilitation failure, the whole purpose of the program is to try to get people to go into the program and get rehabilitation. And if they do it and it doesn't work out and that's the reason that they get separated, then they get an honorable discharge. And the reason that's done is because they want people to try to get help. And then if some people just, even with going through the program, they can't kick the habit, so to speak, well, then they get an honorable discharge, but it says it's because they were a rehabilitation failure. So if the Army goes down that route, that's the way that it goes. But if the Army says, no, we don't want to do that because this person is so bad, they've done all these other things, and we want to separate them because of these other things, the fighting, the assaulting a female service member, whatever it is, fine. We can separate them on those basis, and that's not exempt information. That's not an exempt basis. But you're not allowed to say at all that this was motivated because they were a drug rehabilitation failure. That's the way I read the first sentence of 318-D. You seem to be saying that's not the way that it's read. I don't know how you read this language that says that if a service member is protected by the exemption policy, but you're seeking to – he's recommended for administrative discharge based on non-exempt grounds, i.e., assaulting a female service member. But then it says, and as to whom the decision to initiate discharge action is not motivated by the members having been identified as an alcohol abuser, by the members' exempt use or incidental possession of drugs, or by the member having been involved in the ADA PCP, then the member can receive an honorable, general, undesirable discharge. But you can't even say that the motivation was in part based on them having been involved in the ADA PCP, whether they were rehabilitation success or rehabilitation failure. That's the way I read this language. You're telling me that that's not the right way to read this? Well, I think that we're dealing with a different situation here because here there is not a contention that the involvement in the program or the substance abuse was a motivating factor in the discharge. I asked you the question of what if they had put that on JA, what is it, 155, the recommendation? And you said, nah, wouldn't have mattered. Well, I guess I was thinking about it from the perspective of introducing that as evidence. This deals with the motivation, but what we are talking about is the evidentiary introduction. I want you to answer my hypothetical. JA 155, if they had put that on JA 155, he was an ADA PCP rehabilitation failure. If they had written those words on that document, how would the exemption policy at 3-18D work? I'm sorry. I'm just looking at it a little more closely. I think the sentence that you're looking at is about introducing evidence for prohibited above, right? If the sentence beginning, however, if the commander introduces the evidence prohibited above? No, I'm looking at the first sentence of D that says the service member protected by the exemption policy, and then if the recommendation for administrative discharge is based on non-exempt grounds, and then it says other than evidence obtained directly or indirectly from the members having been involved in the ADA PCP, and as to whom the decision to initiate, that sentence, doesn't that sentence mean that if the decision to initiate is motivated at all by having been involved in the ADA PCP, then you don't fall within that first sentence. You have to get an honorable discharge. Isn't that the way to read that sentence? It might be, Your Honor. I would have to look at that more closely and study it a little bit more, but it is not, that is not implicated by this case because as Your Honor notes, the recommendation for discharge does not mention this as a basis. Well, the reason I'm asking you this hypothetical and beating you about the head and shoulders with it is that I found documentation contemporaneous from the 70s where, you know, the general is testifying to Congress about this program and he's asked the question, what happens if someone is referred or recommended for discharge because their rehabilitation failure? And he's like, well, it's very simple. They get an honorable discharge. And other documents that say that any mention at all of being in the program is verboten. And, you know, participation in the program is, can't be mentioned if you're going this separate route. And what I'm saying here is that I think that that's consistent with this first sentence of 318D, which is that if you even mention it in the recommendation, you fall outside of that and you're going to have to give them the honorable discharge. And to me, if that's the case, how does it make sense that, well, we can just like not mention it in the recommendation, but we can mention it all day long after that and it's no big deal because we look at this table and we'll interpret this vague wording in the table to mean that, no, it can only be statements or drug test results. Well, I think that, and I think Amicus agrees with this, that there is a difference between what, when there is a, what are motivated, prohibited motivating factors for a discharge under, other than honorable conditions and what are the evidentiary prohibitions for introducing evidence into the proceeding. And here, there's no indication in the record that the rehabilitation failure was a motivating factor for the discharge. The only reason it's in the record at all is because it is mentioned in four instances as part of this broader packet that was introduced as evidence. It's present in a couple of progress notes that are part of a broader collection of progress notes, as well as the bar to re-enlistment, as well as a social worker's evaluation. There's no indication, though, that that was a basis for the recommendation or a basis for the discharge. So here, we're dealing with the evidentiary prohibition, which Amicus and the government agree, that that prohibition is spelled out in that column D of table 3-1 as part of the exemption policy. I will say just on the exemption policy sort of more broadly, the exemption policy has, I'm not sure which, you mentioned contemporaneous records from the 70s, but the exemption policy has evolved over time. There are various iterations of it, obviously, that have come out in the past 45 or so years. The current exemption policy is no longer called the exemption policy. It's called the limited-use policy. And it is very specific that the only sort of prohibition on the use of information required during the program is when the soldier reveals drug abuse instances prior to entering the rehabilitation program to the counselors. If the soldier reveals continued drug abuse after entering the rehabilitation program to counselors, that is not covered by the current limited-use policy. How do you think it's, you know, JA-233 is a regulation that defines when someone is considered a rehabilitation failure? And it talks about service member having clearly demonstrated that he is unable or unwilling to be returned to effective duty, inability or unwillingness to remain free from abuse of alcohol or drugs. JA-233 talks about the unit commander consulting with rehabilitation staff has determined that the service member has received maximum benefit and is recalcitrant, et cetera. That the vast majority of time, that determination is going to be best based on getting in the program and you continue using it. I think that's the way that this works. And interacting with the person and based on those interactions, believing that, you know, it's not going to change. I mean, that's the way that drug and alcohol programs work. It's not that you go in and it's a 100 percent success rate immediately. People recidivate, for lack of a better word. They backslide. You don't automatically put them out of the program. Sometimes after a while, it finally kicks in and they are rehabilitation success. But you generally can't determine that until, you know, multiple things happen and there's conversations with the person where you kind of get a sense of, are they ever going to, you know, be able to turn the corner? That's the way that all of these sorts of programs work, not just the armies, but any of them. And so it seems to me very difficult to say that deeming someone a rehabilitation failure is never going to be, I mean, it would be an abuse of discretion, so to speak, for that determination to be made without speaking to the person in the program. Just respectfully push back on that a little bit, Your Honor. I mean, the communications that are protected are not communications between the commander and the person in the program. The communications that are protected are between the person in the program and the physicians and counselors in that program. And I do think that the provisions on JA-233 that Your Honor identified are key provisions. So the consultation is what occurs under Paragraph 3 of that provision, but those are joined by the disjunctive or. Paragraph 2 says that a rehabilitation failure can be made if the service member has clearly demonstrated inability or unwillingness to remain free from the abuse of alcohol or the drunks. That can be demonstrated directly to the commander, for instance, through a DUI offense and does not necessarily need to be revealed from consultation between the commander and the physicians and counselors in the program. I did not get a chance to address the contention that Mr. Baxley had mental health conditions during service that mitigated his misconduct. Let me see if anyone has questions. Sure. Judge Wilkins, do you have a question on this? Are you familiar with the Howells case that I cited earlier? I'm not, Your Honor. The way you've described it, though, is what I understand to be the case where if the – or I'm sorry, you mentioned that it was a rehabilitation success there. It sounds like that was – I don't know if that implicated the exemption policy or if that was sort of normal evidentiary rules of the prejudicial effect. AR 600-85, this exemption policy, is the grounds for its ruling. I'm not familiar with that policy. I will note that, I mean, there are different takes on the effect of that exemption policy. Obviously, the discharge board thought it was prudent to exclude consideration of the rehabilitation failure evidence, but we also have the opinion from the staff judge advocate who said rehabilitation failure is not exempt evidence and that it was appropriate – it was not a problem for that to come into the discharge proceedings. Thank you. Thank you very much. Please affirm. Your Honors, I just have three points that I'd like to make on rebuttal, and I want to start with this notion that – Let me ask you a preliminary question. I want to make sure I understand. I think I hear what the other side is saying. The regs talk about exempt information, and they define exempt information, and it says it's information that is revealed to a physician or rehab counselor at a scheduled interview or evaluation. And I realize it says direct or indirect. That seems irrelevant to me to the question I'm raising. That is very precise. It's information, and there are lots of things in confidence you would reveal to a counselor that you don't want coming out. What we're fighting over now is a conclusion reached by an officer with respect to that process, but I don't know how we're referring to any information that was revealed to a physician or counselor. What's the information that was revealed? I'm not talking about surmise that's reached by the officer who realizes this guy comes out, and it doesn't appear that he was a success. What's the information that was revealed to the counselor? Two responses, Your Honor. I think it's important to note that in column D, the text you're referring to at JA-227, it doesn't just refer to information, but also evidence developed based on that information. But what I'm trying to point you to, it's information, and then it's telling you what we mean by information revealed to a physician or counselor at a scheduled interview or evaluation. It's very precise. It is. It is. It's kind of developed by and all that, but it's talking about information. You and I talk. I'm the counselor. You're revealing things to me, and now I let this information come out so someone can run with it. We're not talking about that. We're talking about a conclusion reached by the officer who acted hearsay. In my view, this guy was a failure in rehab. He's not saying anything that was considered by, referred to, discussed with a counselor in the program.  And with respect, Your Honor, we just don't know. Because the board took a categorical approach. Okay. Isn't that your burden? This is another point that I'd like to clarify as well. So I'll finish this in a jiffy. So you agree we don't know that he can meet this test, that anyone can satisfy this test, right? Because it's very precise in what it says. Information, indirect, direct, whatever, revealed to a physician or counselor at a scheduled interview or evaluation. That is really precise. It is, Your Honor. And we agree that that is the definition of prohibited evidence. However, the board took a categorical approach saying that rehabilitation failure determinations could never be based on information from staff. And Section 5A of the exemption policy says no, it could, because this determination should be made in consultation. So, as Judge Wilkins, you mentioned, there could be situations where information is not. You go back to, I don't know what really happened, but it might fit the definition. That's the best you've got. And you're carrying the burden of proof. So with that, Your Honor, I think there are two important points to mention in burden of proof. Mr. Baxley does have the ultimate burden of proof, of showing that there was an error or an injustice that occurred under 1552. However, the compilation of the record is actually on the board. Sort of the burden of production is on the board's burden. And we get that from Army Regulation 15185. It's not something that we cited in our briefs, but it was something that came up afterwards. It's Army Regulation 15185. Section 1.9 of that regulation says that when an applicant submits to ask for a status upgrade, the board is the one who goes to the Army Records Holding Agency to then send over what is relevant. And so because the board made this legal error, thinking that a rehabilitation failure determination is never protected evidence, that evidence was not pulled into the record for Mr. Baxley to rely on. And so on remand, this would be something that the board could go back and look at, having corrected its interpretation of the exemption policy. And so while Mr. Baxley – Again, you're coming to the point I'm worried about is you really haven't met the burden on the record as it is. That's the bottom line from what you just said. You have not met your burden. There is nothing in the record that shows what the determination was based on, but that is downstream of the board's legal error. It's not what the determination – the determination that he is a failure, it doesn't go to my point. We're looking for something that indicated in an evidence form the information at this – potentially in dispute is something – it's precisely defined, as you well know, is something that was revealed to a physician or counselor at a scheduled interview or evaluation. And I think you're honestly now saying, I don't have that. I can't show you that. Well, and we – there is that information, specific information is not in the record. Right. And that's the protected information, and you can't show that protected information was gleaned or used indirectly or directly because you can't show that they're relying on anything like that, nothing. Your Honor, with respect, I don't think it's just – You're saying they may have because they may have talked with the counselor. Is that enough to satisfy the burden of proof? The burden of proof, no, but a remand, yes. And I think the important thing is that here it's not just the information that's protected, but indeed it says also protected is evidence developed by such information. Not that the information has to be referenced specifically, but it has to be – But they're describing the definition of evidence. Which is both information or evidence developed by that information. And a determination could be developed by information. Okay. We may be going around in circles, but I think you get my point. I do, I do. You're not really hitting what the regulation is concerned about. It's confidential conversations between someone in the program and the counselor, and that information is now being used, and things are developed from it. But that has to be part of it, and you haven't shown that. It does, Your Honor, but again, we go back to the board compiling the record and not thinking it needed this information. No, I understand what your ploy is now, that is well, but they did it in a messy way, and maybe we'd know a little bit more. Because as it stands, we have no evidence of why this determination was made. Opposing counsel referenced it. Did you raise that below? I didn't argue below, Your Honor. Was it raised below? Generally, Mr. Baxley represented himself in pro se, and he did make the argument. I'm sorry, I forgot that. No, no, it's fine. But opposing counsel did mention the DUI as the reason for the determination. But I just wanted to clarify that the record does not support that whatsoever. We have the DUI that came in November 26th of 1975. But at JA-205, Mr. Baxley and others testified that he had been declared a rehabilitation failure in November 1975. That's JA-205. So if he was declared a rehabilitation failure in November 1975, then it doesn't make sense from a timeline perspective that his later DUI would be the reason for that. And JA-236, there's a reference to court referral. This is referring back to his earlier DUI from May, and that's JA-210, I believe. So then the very last thing that I wanted to mention and then wrap up is that there was a comment previously that, well, this clearly was not honorable conduct. This was misconduct that was not something that qualified as honorable discharge. That may be the case, but the Army has already decided as a matter of policy in prohibited evidence is introduced, then regardless of the overall performance of duty, that's a direct quote from 318D, honorable discharge is required. And so because of the board's deficiencies on both the exemption policy and the mental health issues, we ask this court to vacate and remand for further consideration. Thank you. All right, Mr. Clayton, you are appointed by the court to represent Mr. Baxley. You've done a wonderful job. Thank you. Thank you, Judge.
judges: Henderson; Wilkins; Edwards